This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, James Bennett, Jr., appeals his conviction in the Wayne County Court of Common Pleas. We affirm.
 I.
On January 18, 2001, the Wayne County Grand Jury indicted Mr. Bennett on three counts of sexual battery, in violation of R.C. 2907.03(A)(5), and twelve counts of sexual imposition, in violation of R.C. 2907.06(A)(1). These charges arose from conduct involving his then fourteen-year-old stepdaughter. A jury trial was held on June 11 and 12, 2001. In a judgment journalized on June 15, 2001, the jury found Mr. Bennett guilty on all counts in the indictment. On July 19, 2001, Mr. Bennett was sentenced to the maximum prison term of five years on each of the three counts of sexual battery, a felony of the third degree. See R.C. 2907.03. These sentences were to be served concurrently. The trial court elected not to impose sentence on the twelve misdemeanor counts of sexual imposition. This appeal followed.
 II.
Mr. Bennett asserts three assignments of error for review. We will discuss each in due course.
 A. Second Assignment of Error The trial court committed error in [sic] the prejudice of the substantial rights of the defendant by failing to enter a directed verdict of acquittal regarding the sexual imposition counts.
In his second assignment of error, Mr. Bennett contends that the state failed to adduce sufficient evidence corroborating the victim's testimony, as is required under R.C. 2907.06(B), and therefore, his sexual imposition convictions must be reversed.
A conviction without the imposition of sentence is not a final appealable order. State v. Lewis (1999), 131 Ohio App.3d 229, 238. In the present case, the trial court declined to sentence Mr. Bennett on the sexual imposition convictions. Consequently, there is no final appealable order as to Mr. Bennett's sexual imposition convictions. See State v.George (1994), 98 Ohio App.3d 371, 374. Accordingly, this court declines to address any claims of error regarding the sexual imposition convictions, as this court is without jurisdiction to do so.
 B. First Assignment of Error The verdict in this case is against the manifest weight of the evidence.
In his first assignment of error, Mr. Bennett avers that his convictions for sexual battery were against the manifest weight of the evidence.[1] Specifically, he argued that the testimony of the victim, R.B., was not credible due to her confusion over the dates, times, and places of the acts giving rise to the convictions. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Mr. Bennett was convicted of three counts of sexual battery, pursuant to R.C. 2907.03(A)(5), which provides: "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's * * * stepparent[.]" The term "sexual conduct" includes "vaginal intercourse between a male and female[.]" R.C. 2907.01(A).
At trial, R.B., who was born on July 31, 1982, testified that, in February 1996, she was living in Orrville, Wayne County, Ohio, with her mother, her two brothers, and Mr. Bennett. Mr. Bennett was her stepfather. R.B. related that, in February 1996, while she was sleeping on a couch in the family residence, she was awoken by Mr. Bennett trying to pull down her blanket. She testified that, when she heard him unzip his pants, she ran and told her mother. As a result of the incident, Mr. Bennett left the home but returned approximately one week later. According to R.B., Mr. Bennett claimed to be sleepwalking when the incident occurred; therefore, upon his return to the home, certain safeguards were implemented, such as the room in which Mr. Bennett slept being locked at night.
R.B. testified that, approximately eight to eleven months after the February 1996 incident, there was a progression of events that ended in Mr. Bennett having vaginal intercourse with her on three separate occasions. R.B. stated that, initially, for approximately one week, she heard someone climb the creaky stairs and stand in the hallway outside her bedroom at night. She assumed the person in the hallway was Mr. Bennett because her brothers and mother were already asleep. R.B. stated that, over the next couple of nights, Mr. Bennett came and stood at the foot of her bed. R.B. testified that, during the following few nights, Mr. Bennett came into her room and tried to pull down her covers. R.B., however, pulled back, and, after a short tugging contest, Mr. Bennett would leave. According to R.B., when Mr. Bennett next came into her room, he rubbed R.B.'s breasts and genital area above her clothing. This form of touching occurred for approximately one week. R.B. testified that, after that week, Mr. Bennett began to rub her breasts and genitals beneath her clothing. This type of touching occurred on a couple of nights. According to R.B., the next time Mr. Bennett came to her room, he pulled her pajama bottoms and underwear down around her ankles and engaged in vaginal intercourse with her. R.B. testified that Mr. Bennett had vaginal intercourse with her on three separate occasions. R.B. stated that the incidents described above occurred sometime between October 1996 and April 1997.
At trial, R.B. admitted to not looking at the person who came into her room and sexually assaulted her, but believed her attacker to be Mr. Bennett because he had previously tried to touch her in February 1996. She added that she believed Mr. Bennett was the perpetrator of the sexual battery because her older brother, Z.B., had moved out of the house when the sexual intercourse occurred and her younger brother, C.B., who was then approximately twelve years old, was not as big in stature as the man who had assaulted her. Further, R.B. explained that she did not tell anyone about these incidents, because Mr. Bennett was expelled from the home for only one week after the February 1996 incident and because everyone dismissed the February 1996 incident believing Mr. Bennett when he claimed to have a sleeping disorder. Additionally, R.B. admitting to occasionally using marijuana during the time period of the incidents giving rise to the present indictment.
On cross-examination, R.B. admitted that she could not remember exactly when her brother, Z.B., left the home, but believed that Z.B. had already left when the sexual intercourse occurred because these incidents took place in Z.B.'s former bedroom, into which R.B. had moved after Z.B. left the home. R.B.'s mother, Connie, on the other hand, testified that Z.B. left home on his seventeenth birthday, which was November 13, 1997, and therefore, presumably would have been living at home at the time of the incidents.
Jody Shoup, a counselor with New Beginnings Counseling Center at the Christian Children's Home, testified that she met with R.B. shortly after the February 1996 incident. Ms. Shoup stated that, when R.B. told her about the touching incident of February 1996, she appeared traumatized and was visibly upset. Ms. Shoup also related that, at that time, R.B. wanted her mother to divorce Mr. Bennett.
Michael Parks, who works at the Christian Children's Home, testified that, on February 6, 2001, he had a telephone conversation with Mr. Bennett during which they discussed R.B.'s allegations of sexual abuse that gave rise to the present indictment. Mr. Parks stated that, during that conversation, Mr. Bennett admitted to initially lying about the February 1996 incident and did not deny doing the actions for which he was charged.
Detective John Chuhi of the Wayne County Sheriff's Department testified that, on November 16, 2000, he met with R.B. about the allegations. He noted that R.B. was very emotional in describing the incidents. After speaking with R.B., Detective Chuhi met with Mr. Bennett on November 17, 2000. During the meeting, Mr. Bennett stated that, during the February 1996 touching incident, he was conscious as to what was happening but not as to whom it was happening with. At the end of the interview, Detective Chuhi took a signed written statement from Mr. Bennett, which was admitted into evidence at trial. The statement was in question and answer form, stating in relevant part:
 QUESTION: In reference to the allegations made by your step-daughter [R.B.], did you have sexual intercourse with her ap[p]rox. 2-3 yrs. ago as she stated?
MR. BENNETT: NO, NOT CONSCIENCLLY [sic]
 QUESTION: Is it possible that you had sexual intercourse with your step-daughter [R.B.] as she stated not conscienclly [sic] knowing it was her?
MR. BENNETT: YES.
 QUESTION: Do you believe [R.B.] was being truthful as to what she stated happened between you her?
MR. BENNETT: I'VE NOT KNOWN [R.B.] TO EVER LIE.
* * *
QUESTION: Do you feel guilt about what happened to [R.B.]?
 MR. BENNETT: YES, [R.B.] NEVER DESERVED ANY OF WHAT HAPPENED. I HOPE SHE'LL FORGIVE ME FOR WHAT EVER [sic] HAS HAPPENED AND PRAY GOD'S FORGIVENESS FOR ME AND HIS HEALING STRENG[TH] FOR HER.
Detective Chuhi related that Mr. Bennett was emotionless during most of the interview, except when he was asked whether he felt guilt about what happened to R.B. A friend of Mr. Bennett, however, testified that Mr. Bennett does not normally have an expressive demeanor.
On January 22, 2001, Detective Chuhi had a second meeting with Mr. Bennett, during which Detective Chuhi served him with the indictment. After being advised of his rights and indicating a willingness to discuss the matter, Mr. Bennett admitted to not being truthful during the November 17, 2000 meeting. Specifically, according to Detective Chuhi, Mr. Bennett admitted that he in fact knew that he was touching R.B. in February 1996. Detective Chuhi testified that Mr. Bennett also expressed an intention to admit the charges at trial.
The defense called Connie, R.B.'s mother, to testify. Connie stated that, after the February 1996 incident, Mr. Bennett claimed to have a sleeping disorder, and, as a result, certain ground rules were implemented. She also related that the stairs creak, as described by R.B., but that the creaking cannot be heard from downstairs. Connie did not know whether the creaking could be heard from the upstairs bedrooms, as R.B. claimed. Additionally, Connie stated that she was not sure in which bedroom R.B. was sleeping when the incidents occurred, as her children frequently changed rooms. She also stated that Z.B. moved out of the home on his seventeenth birthday, and therefore, would have been living at home at the time of the incidents, contrary to R.B.'s testimony.
Connie further testified that, on November 14, 2000, Z.B. informed her that Mr. Bennett was a "child molester." Apparently, while R.B. was at college, Z.B. found R.B.'s journal at home, in which R.B. described her feelings about the sexual assaults.[2] On November 14, 2000, Connie and C.B., her younger son, left the family home, and Connie reported the matter to law enforcement. She then picked up R.B. from college. In addition, on cross-examination, Connie related that, after learning about R.B.'s allegations, she had a telephone conversation with Mr. Bennett, during which Mr. Bennett allegedly admitted to all of the crimes with which he was charged. On redirect, however, Connie acknowledged that Mr. Bennett did not specifically address whether he engaged in vaginal intercourse or the touching acts with R.B.
Next, Mr. Bennett took the stand in his own defense. Mr. Bennett testified that, upon being confronted with R.B.'s allegations by Detective Chuhi, he immediately denied them but felt that Detective Chuhi did not believe him. Mr. Bennett also explained that he was referring to the February 1996 touching incident when he made the written statement on November 17, 2000 and during the telephone conversation about which Connie testified. Additionally, he explained that he told Detective Chuhi that he was going to admit the charges in the indictment because he was just going to give up. Mr. Bennett maintained that he was innocent of the charges.
On cross-examination, Mr. Bennett admitted to lusting after R.B. when she was eleven years old. He also admitted to lying about the February 1996 incident, during which he touched R.B.'s leg, in order to protect himself and because he felt ashamed and guilty. Mr. Bennett, however, denied being attracted to R.B. after the February 1996 incident, which he described as a wakeup call to change his life. Mr. Bennett acknowledged that, on November 17, 2000, he was aware that Detective Chuhi was asking questions directed solely toward the accusations between October 1996 and April 1997 and not the February 1996 incident. When asked why he testified on direct examination that he was referring to the February 1996 incident when he answered Detective Chuhi's questions, Mr. Bennett explained that he thought R.B. fabricated the allegations in the current case to get him to admit he was lying about the February 1996 incident.
On appeal, Mr. Bennett has argued that R.B.'s lack of ability to accurately remember dates, times, and places renders her testimony not credible, and therefore, his convictions for sexual battery were against the manifest weight of the evidence. We note that adjudging the credibility of witnesses is generally the province of the jury. Although there was conflicting testimony presented at trial, we cannot conclude, after a thorough review of the record, that the jury clearly lost its way and committed a manifest miscarriage of justice in convicting Mr. Bennett on three counts of sexual battery. Consequently, the sexual battery convictions are not against the manifest weight of the evidence. Mr. Bennett's first assignment of error is overruled.
 C. Third Assignment of Error Maximum sentence imposed by the court is error. No evidence exists to support the court's finding that the maximum sentence was appropriate.
In his third assignment of error, Mr. Bennett contends that the trial court erred in imposing the maximum sentence because the record did not support a finding that the maximum sentence was appropriate. We disagree.
When reviewing an appeal of a sentence, an appellate court may modify a sentence or remand the matter to the trial court for resentencing if the appellate court clearly and convincingly finds that the sentencing court acted contrary to law or the record. R.C. 2953.08(G). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. The sentence imposed should be consistent with the overriding purposes of felony sentencing, namely "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).
 The Imposition of Greater than the Minimum Sentence
If a felony offender has not previously served a prison term, the trial court must impose the shortest prison term authorized for the offense pursuant to R.C. 2929.14(A), "unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." State v.Edmonson (1999), 86 Ohio St.3d 324, syllabus.
Mr. Bennett was convicted of three counts of sexual battery, in violation of R.C. 2907.03(A)(5). Sexual battery is a felony of the third degree, for which a sentence of one, two, three, four, or five years may be imposed. R.C. 2907.03(B) and 2929.14(A)(3). Mr. Bennett had no prior criminal record, and consequently, had not previously served a prison term. In deciding that the minimum sentence was not appropriate in this case, the trial court specifically found on the record at the sentencing hearing and in its sentencing entry that the imposition of the minimum sentence would demean the seriousness of the offense. Although not required to do so, the trial court also provided reasons for its decision. The record supports the trial court's determination on this matter. Therefore, we conclude that the trial court did not err in imposing greater than the minimum sentence.
 The Imposition of the Maximum Sentence
R.C. 2929.14(C) permits a trial court to impose a maximum prison term on a defendant who has met one of four criteria: 1) the defendant committed the worst form of the offense; 2) the defendant poses the greatest likelihood of committing future crimes; 3) the defendant is a major drug offender of the type set forth in R.C. 2929.14(D)(3); or 4) the defendant is a repeat violent offender of the type set forth in R.C.2929.14(D)(2). Additionally, R.C. 2929.19(B)(2)(d) mandates that if the trial court imposes a maximum prison term allowed for an offense under R.C. 2929.14(A), the court must give its reasons for that decision.
In the case sub judice, the trial court found at the sentencing hearing and in the sentencing entry that Mr. Bennett had committed the worst form of the offense, thereby justifying the imposition of the maximum sentence of five years on each of the sexual battery counts. Mr. Bennett challenges this determination.
When considering whether an offender committed the worst form of the offense, the trial court need not compare the offender's conduct to a hypothetical, absolute worst form of the offense, but rather, must consider the totality of the circumstances to determine whether the offender committed the worst form of the offense. State v. Boshko
(2000), 139 Ohio App.3d 827, 836. In determining whether an offender's conduct is more serious than conduct normally constituting the offense, a trial court is guided by a nonexclusive list of factors enumerated in R.C. 2929.12(B)(1)-(8). Id. The R.C. 2929.12(B) factors relevant in the present case include:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the * * * age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
* * *
 (6) The offender's relationship with the victim facilitated the offense.
In support of its finding that Mr. Bennett had committed the worst form of the offense, the trial court noted that, on multiple occasions, Mr. Bennett sexually assaulted his fourteen-year-old stepdaughter, who was living in his home, causing her severe emotional and mental injury. The court further stated that, by his own admission, Mr. Bennett began lusting after the victim at age eleven and that, although Mr. Bennett sexually touched the victim prior to the sex crimes in the present case, he denied such conduct until the time he was charged in the instant matter. Additionally, the court reasoned that the victim may not have initially reported the conduct giving rise to the present charges because, after she promptly reported the February 1996 touching incident, Mr. Bennett was permitted back in the home within a short period of time. The trial court believed that Mr. Bennett used the situation to his advantage. The record supports these findings. Accordingly, we cannot conclude that the trial court clearly and convincing acted contrary to law or the record in finding that Mr. Bennett committed the worst form of the offense and in sentencing him to the maximum sentence on each of the sexual battery counts. Mr. Bennett's third assignment of error is overruled.
 III.
Mr. Bennett's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
BAIRD, J., WHITMORE, J. CONCUR.
[1] As discussed supra, this court is without jurisdiction to consider any assignments of error regarding the sexual imposition convictions; therefore, this court will confine its review of the first assignment of error to Mr. Bennett's convictions for sexual battery.
[2] The journal, however, was neither located nor produced at trial.